Sewall, J.
In this action on a policy of insurance, the plaintiff demands the sum of 1800 dollars, insured by the defendants on *183 the freight of the ship Fortune, for a voyage from Leghorn to Smyrna, and back from Smyrna to Leghorn with cotton ; and the plaintiff avers a total loss, by a capture of the ship on her return passage with a lading of cotton. The defendants admit that the plaintiff is entitled to recovei, unless their defence prevails; which they state upon the following facts appearing in the case : —
The capture alleged was by a British armed vessel, and the cargo of cotton on board at the time was the property, and had been taken on freight for the account and risk of Messrs. Franchetti, merchants of Leghorn, upon an agreement with them by the supercargo of the ship; they being subjects of the emperor of France, then at war wdth Great Britain. This cargo was disguised and covered, as the property of the owners of the ship, by false bills of lading, and papers made out pursuant to the said agreement. The British prize court at Malta, where the ship was carried by the captors, acquitted the vessel, and, after allowing further time for proof, condemned the cargo, and refused to decree any freight to the owners, for this reason assigned in the sentence — that the bills sf lading expressed the cargo to be the owners’ property, and that no freight was to be paid. It also appears that no notice of the said agreement to carry the goods of the subjects of a belligerent power, or of an intention to cover property taken on freight by false bills of lading, was given to the underwriters, when the policy in question was effected.
* It is contended that the defendants are not liable for [ * 225 j the loss demanded, 1st, because facts and circumstances material to the risk were concealed by the plaintiff, when he effected his insurance; and, 2dly, because the loss happened by the misconduct of the plaintiff, or his agent.
The employment in which a vessel is to be engaged, when attended with any extraordinary hazard, must always be material to the risk ; and if this be known to the assured, and the extraordinary circumstances are not suggested by the description of the voyage, the concealment will avoid the policy. (7) I say, if known to the assured ; for then, in omitting to represent the extraordinary risk, whether he acted under an apprehension that it is not material, or from inattention, or from motives injurious to the underwriter, the concealment being of a circumstance which proves to have been material, the policy will be avoided.
On the other hand, when the circumstance from which an extraordinary risk may be apprehended, was not known to the assured, or he knew only what was sufficiently suggested by the *184 description of the risk insured, and there has been no misrepresentation respecting it, the underwriter cannot avoid his contract upon tile objection of a material concealment. Against circumstances within the risk described, which may or may not happen, but which, happening, are attended with an extraordinary degree of hazard, the underwriter may guard himself by his inquiries, or by stipulations restricting the risk he undertakes; and when he neglects these precautions, he must be understood to waive his right to further information, and to undertake against all the events and accidents of the voyage insured.
The neutral character of a vessel, and her lading, is a circumstance very important in estimating the risk upon a voyage to be performed, in a time of war, within the neighborhood of the belligerents ; but the sole tendency being to lessen the risk, a [ * 226 ] representation of it is not requisite * to the validity of the policy. This fact is understood by the parties, and is necessarily inferred, where the insurance is made by the citizen of a neutral state, resident there, of his own property; and without any express representation or warranty, the assured impliedly engages to preserve his property, and to conduct the voyage insured, in a neutral condition and character, to which alone the insurance applies. But where the insurance is of the freight only of a neutral vessel, it is not a necessary inference, nor is there any implied engagement, that the cargo carried in her shall be neutral; for a neutral vessel may be lawfully employed in carrying a cargo which is the property of a belligerent. And in that case, when the voyage insured commences in a foreign country, under a supercargo, who is at liberty to take the property of neutrals or belligerents, as he can find employment, the assured may be innocently silent, especially when he is not questioned, upon the mere probability of the event. But when the assured has had intelligence, which shows the risk to be under circumstances the most unfavorable to underwriters, and at the time the policy is effected it is known to the assured that his vessel is employed in carrying a cargo which is not neutral property, and especially if it is not known that the master or supercargo, in the charge of the vessel, had undertaken to disguise the national character of the cargo by false papers, — intelligence of this nature certainly ought to be disclosed. The concealment of it is injurious to the underwriter, and his neglect to inquire may be considered, rather a confidence in the integrity of the assured, than a waiver of his right to information so important in estimating the risk to be insured.
In the case at bar, freight was insured as the property of the plaintiff, a citizen of the United States, upon a vessel, of which he and *185 other merchants of Newburyport, likewise citizens, were sole owners ; and, therefore, in the understanding and * im- [ * 227 ] plied intentions of the parties in this policy, it was an insurance upon a vessel of the United States.
But there was nothing in the contract, which restricted the assured to the freight of a neutral cargo ; nor was he, in this respect, restrained by any rule of municipal or public law. And if, when the policy was effected, the insured was without any conclusive ' intelligence as to the particular employment in which his vessel was engaged, his silence upon that subject was innocent. It was not requisite to the validity of his contract, that he should particularly inform the underwriters of the probability of an event within the description of the voyage insured. If he was not without intelligence, and the employment was known to the assured, including especially the agreement of his supercargo to cover the property of a belligerent by false papers, this certainly ought to have been disclosed. Such intelligence was material in estimating the risk, and the concealment of it was injurious to the underwriters, who might justly avoid a contract thus obtained. It is not necessary to be more explicit upon this ground of the defence, as it does not appear from the facts stated, that the assured had intelligence of the agreement, of the freight, between the supercargo of the ship and Messrs. Franchetti, when the policy was effected; and upon the other ground of the defence there is no doubt.
Without any representation or warranty, the neutral ownership and character of the vessel, upon which the freight was insured, was constructively a circumstance in this contract understood by the parties; because it was a fact which, from the very nature of the contract, could not have been overlooked, or considered immaterial, in estimating the risk. The papers and documents which a vessel of the United, States is required to have, that course of conduct which a vessel navigated under the protection of a neutral flag is required to observe, either by particular treaties, or the rules of public and national law, were, by a necessary implication, although tacitly, engaged on * the part of the assured. [ * 228 ] This is the doctrine expressly recognized in the case of Christie vs. Secretan, (8) although not enforced in that case upon the facts stated ; and it is, indeed, a particular application of this Well-known principle, by which contracts of insurance are regulated, that the ship or property assured is to be navigated, con- < ducted, and managed, according to law ; and whether this principle 1 is enforced as an implied condition of the policy, or more reason *186 ably, perhaps, (according to the opinion intimated by Justice Lawrence in the case cited,) as an engagement of the assured, which shall prevent him from recovering a loss incurred by the negligence or misconduct of himself or his agent, is not important to this decision.
In the application of this rule, certain events, or events within the policy happening under certain circumstances, attributable to the negligence or misconduct of the assured, are necessarily excepted from the contract of insurance, which regards events, the effects of inevitable perils, or of a superior force, not to be prevented by human foresight.. For losses thus incurred, the assured may justly claim an indemnity; but not for losses incurred, if I may use the expression, in his own wrong, by the failure of a contrivance, or, as it would be styled in the jurisdiction of a belligerent nation against whom it was directed, a fraud, of which the agent of the assured took the hazard; and for his conduct the assured is responsible.
Upon this ground, we are of opinion that the defendants must prevail in the case at bar. The freight was lost, not by any unavoidable consequence of the capture alleged, for the vessel was acquitted, notwithstanding the condemnation of the cargo : yet the freight was refused ; and this reason assigned, that the bills of lading represented the cargo to be owners' property, and that no freight was to be paid. This was a false representation of the nature of the lading, and an intended deception; and the transaction throughout was a departure from that cójiduct, which, by [ * 229 ] principles of public and national law, * those who have the charge of a vessel sailing under the protection of a neutral flag are bound to observe. The direct causes of the loss, therefore, was not a casualty or event within the contract of insurance, but a violation of the implied engagement of íhe assured, that the vessel and voyage, upon which freight was insured, should be conducted according to law. \
Pursuant to the agreement of the parties, the verdict taken in this case must be set aside, and a general verdict entered for the defendants.

 Marshall, 351, 352. —1 Emerig. 172.

 5 D. & E. 192. — Marsh. 385, 387.